**AFFIRMED; Opinion Filed November 9, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-17-00799-CV

**ZENA JAMES, Appellant**
**V.**
**AMY K. WITHERITE AND EBERSTEIN & WITHERITE, LLP, Appellees**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-09989**

## MEMORANDUM OPINION

Before Justices Lang, Fillmore, and Schenck
Opinion by Justice Lang

Appellant Zena James filed this lawsuit against appellees Amy K. Witherite and the law firm of Eberstein & Witherite, LLP, alleging legal malpractice, fraud, negligent misrepresentation, and violation of the Texas Deceptive Trade Practices Act ("DTPA"). *See* TEX. BUS. & COM. CODE ANN. §§ 17.41–.63 (West 2011 & Supp. 2017). Appellees filed a combined traditional and no-evidence motion for summary judgment, which was granted by the trial court.

In three issues on appeal, James contends the trial court erred by denying her motion for leave to file an amended pleading, granting appellees' motion for summary judgment, and allowing her motion for new trial to be denied by operation of law. We decide James's three issues against her. The trial court's judgment is affirmed.

## I. FACTUAL AND PROCEDURAL CONTEXT

This lawsuit was filed on August 28, 2015. In her live pleading at the time of the judgment complained of, James stated that on approximately April 16, 2010, she was shopping at a Whole Foods Market in Dallas, Texas. According to James, (1) a bottle of mineral water she had placed into her shopping basket "exploded," resulting in glass and water "all over the floor"; (2) she slipped on the water and suffered "extensive injuries and damages"; (3) appellees filed an October 20, 2011 lawsuit on her behalf ("the Lawsuit") against La Galvanina Spa ("Spa" or "La Galvanina"), which was the vendor of the mineral water, and multiple entities affiliated with Whole Foods Market, Inc. ("Whole Foods"); (4) the claims in the Lawsuit consisted of a products liability claim against Spa and negligence and premises liability claims against Whole Foods; and (5) in August 2013, the Lawsuit was resolved "for a seriously deficient amount during mediation."

In her legal malpractice claim against appellees in this case, James alleged that she "suffered damages because she would have received a greater amount of damages in the Lawsuit but for the Defendants' gross negligence" in not filing a response to a motion for summary judgment filed by Whole Foods on June 21, 2013, "not appearing for the MSJ hearing" on that motion, "not properly pleading a premises liability cause of action" against Whole Foods, and "fail[ing] to plead a cause of action for general negligence against Whole Foods and assert the doctrine of res ipso loquitur." According to James, that alleged breach of the standard of care "proximately caused injury to Ms. James, which resulted in the following damages: the court granted Whole Foods's MSJ, which declared that James take nothing against Whole Foods." Also, James alleged (1) sometime prior to the August 2013 mediation, "Defendants indicated to the Plaintiff that a case against SPA was not possible because SPA did not have a place of business in Texas; therefore, Plaintiff lacked personal jurisdiction over SPA"; (2) "[h]owever, the actual situation was that Defendants . . . had failed to respond to SPA's motion for summary judgment

and later counseled settlement for a seriously deficient amount during mediation in order to avoid Ms. James' discovery of the truth"; and (3) "Defendants' breach of the standard of care proximately caused injury to Ms. James, which resulted in the following damages: Ms. James settled for a deficiently lower amount based on Defendants' improper legal advice regarding jurisdictional issues against SPA in Texas, failure to plead a cause of action for general negligence against SPA, [and] failure to serve SPA with discovery that would have aided in developing potential issues with the bottle."

In her DTPA claim, James asserted (1) "instead of telling the Plaintiff what actually occurred [respecting Whole Foods's June 21, 2013 motion for summary judgment], the Defendants unconscionably and intentionally misrepresented to the Plaintiff that the [trial judge] granted Whole Foods's motion solely because Whole Foods argued it was an innocent retailer"; (2) "Defendants knowingly and intentionally misrepresented the reason for the dismissal of the lawsuit against Whole Foods because Defendants knew they failed to file a response or appear in court on Whole Foods's motion for summary judgment"; (3) "Defendants knowingly and intentionally misrepresented to Plaintiff the reason the Lawsuit could not go forward against SPA"; and (4) those actions "cannot be characterized as advice, judgment, or opinion."

As to fraud, James contended (1) Defendants' representation to Plaintiff that Whole Foods was dismissed from the Lawsuit "based on innocent retailer issues" was "a false statement of fact" because "Defendants knew that Whole Foods was dismissed from the case due to the Defendants not filing a response or appearing for Whole Foods' MSJ hearing"; (2) that representation "was material because it caused Plaintiff to settle for a seriously deficient amount during mediation with SPA due to the fact that SPA was the only remaining party sued by the Plaintiff in the Lawsuit"; (3) "Defendants' statement to Plaintiff regarding the jurisdiction over SPA was false and/or made recklessly, as a positive assertion, and without knowledge of its truth"; and (4) that representation

"was material because it caused Plaintiff to settle for a seriously deficient amount during mediation."

Further, in her claim for negligent misrepresentation, James contended (1) the above-described representation respecting Whole Foods constituted a "failure to disclose information when Defendants had a duty to do so"; (2) the above-described representation respecting Spa constituted a "misstatement of fact and/or opinion"; and (3) "Defendants did not use reasonable care in communicating the information."

Appellees filed a general denial answer and asserted various affirmative defenses and other defensive matters. Specifically, appellees asserted in part (1) "Plaintiff's [DTPA], fraud, and negligent misrepresentation claims are barred as improperly fractured claims for legal malpractice," and (2) "Plaintiff's claims are barred in whole or in part because she cannot show that she would have prevailed in her suit against Whole Foods and La Galvanina Spa had she gone to trial, and therefore cannot show that she has suffered harm by the settlement of her claims in the underlying lawsuit."

Trial in this case was set for April 10, 2017. Also, the parties and the trial court signed a January 15, 2016 "Discovery Control Plan" that stated in part, "No additional parties may be joined more than twelve (12) months after the commencement of this case except on motion for leave showing good cause."

On February 28, 2017, James filed a "Motion for Leave to File Amended Pleading Adding Defendant." Therein, James requested leave to amend her pleading "to join a new party, namely Mr. Brian Eberstein as a Defendant, whose involvement and participation in the fraud has been discovered and confirmed throughout Plaintiff's utilization of the discovery process during the oral deposition of Ms. Witherite, which only occurred on February 22, 2017." James asserted that

her motion for leave to amend should be granted because "Defendants cannot show surprise and cannot show prejudice" and this case "is not an expedited action."

On March 7, 2017, appellees filed a "Motion for Traditional and No-Evidence Summary Judgment." In that motion, appellees stated in part,

> Ultimately, James's accident at Whole Foods could not be established as the cause of her alleged injuries and medical conditions, most of which she demonstrably had before the incident, or were degenerative conditions. Despite the weaknesses of her case, Defendants obtained for James a generous settlement offer. Against the strong and repeated advice of her counsel, James rejected that offer. A few weeks before trial, at a mediation, James eventually settled with Whole Foods and La Galvanina Spa for a lesser amount. She then brought this lawsuit claiming her recovery was insufficient and alleging that her former lawyers had committed malpractice.

Appellees sought (1) traditional summary judgment on James' claims for DTPA violations, fraud, and negligent misrepresentation "because they are improperly fractured legal malpractice claims that should be dismissed under the Texas anti-fracturing rule" and (2) no-evidence summary judgment on James' legal malpractice claim "because . . . James has no evidence of the elements of her claims against the defendants in the underlying lawsuit, Whole Foods and La Galvanina, as necessary to establish suit-within-a-suit proximate causation for legal malpractice." The evidence attached to that motion consisted of James's live petition described above, a March 7, 2017 affidavit of Witherite[1], and excerpts from a January 25, 2017 deposition of James.

---

[1] In her affidavit, Witherite stated in part as follows:

7. In March 2013, La Galvanina made a settlement offer of $225,000 to Zena James to resolve the case against all parties, including Whole Foods. La Galvanina made the settlement offer again by letter dated June 19, 2013. Against my advice, Ms. James rejected the settlement offer.

8. While the Underlying Lawsuit was pending, Ms. James underwent treatment for her back and neck pain. Ms. James saw Paul Salinas, M.D., a neurosurgeon at Frisco Spine in the Dallas area. Dr. Salinas diagnosed Ms. James with degenerative disc disease of the C-spine and L-spine. Dr. Salinas also noted a syrinx, a fluid-filled cavity that develops in the spinal cord, in the thoracic cord. In May 2011, Dr. Salinas performed an ACDF (anterior cervical discectomy and fusion) on Ms. James. In his records, Dr. Salinas did not link the syrinx, or any other medical condition, with the fall at Whole Foods.

9. In late 2012, Ms. James went to see a syrinx specialist, Dr, Ryan Trombly, at the University of Miami Hospital in Miami, Florida. Dr. Trombly reported that Ms. James' syrinx was "very small", had not "grown significantly", and "appear[ed] to be relatively benign." Dr. Trombly also reported that the syrinx was not causing spinal cord compression and her physical exam was normal. Dr. Trombly recommended continuing pain treatment with her Texas doctors and a follow-up MRI in a year. Dr. Trombly also did not link the syrinx with the fall at the Whole Foods grocery in his records.

Additionally, appellees filed a March 23, 2017 response to James's motion for leave to amend her pleading. Therein, appellees asserted in part,

> Pursuant to the [trial court's] Discovery Control Plan, <u>which was agreed to and signed by counsel for the parties</u>, the deadline for amended pleadings asserting new causes of action or defenses expired on December 12, 2016, and the deadline for all other amended pleadings passed on February 24, 2017. The Discovery Control Plan states that no additional parties may be joined more than 12 months after commencement of the case (deadline of August 28, 2016) *except on motion for leave showing good cause. . . .*
> James missed the deadlines for amended pleadings and additional parties by several months. And she cannot show (nor does she even argue) good cause for the late amendment.

(emphasis original). Attached to appellees' response to James's motion to amend her pleading were excerpts from James's January 25, 2017 deposition described above, in which James testified in part that, prior to mediation in the Lawsuit, (1) "they both pulled me—Brian and Amy pulled me into a room and said, Hey, we have bad news. We got word this morning the judge is throwing out your case," and (2) at that point, both Eberstein and Witherite described to James the purported developments and options in the Lawsuit.

On March 27, 2017, James filed (1) approximately 280 pages of medical records from several providers specializing in spine treatment and (2) several affidavits authenticating those records. Additionally, James filed a March 29, 2017 response to appellees' motion for summary judgment in which she argued in part that her claims "are not impermissibly fractured" because

---

10. After Zena James' deposition was taken in the Underlying Lawsuit, in July 2013, Whole Foods and La Galvanina both filed motions for summary judgment. La Galvanina filled a No-Evidence Motion for Summary Judgment, asserting that Ms. James had no evidence to support her manufacturing defect claim, her marketing defect claim, or her design defect claim for her products liability case. Whole Foods filed a Traditional and No-Evidence Motion for Summary Judgment, seeking a complete dismissal of Ms. James' negligence and premises liability claims.

11. Due to a miscommunication, my firm missed the July 18, 2013 hearing on Whole Foods' Motion for Summary Judgment. Based upon my conversations with counsel, I believed the Whole Foods hearing was being moved to a later date along with La Galvanina's Motion for Summary Judgment. The court initially granted Whole Foods' Motion for Summary Judgment. On July 24, 2013, E&W filed, on behalf of Ms. James, Plaintiffs Motion to Set Aside Summary Judgment in favor of Defendant Whole Foods and Motion for New Trial. During a telephonic hearing on August 12, 2013, the court granted Plaintiffs' Motion to Set Aside. Both motions for summary judgment were then set for hearing in September.

12. On August 28, 2013, the parties to the Underlying Lawsuit went to mediation. The parties settled at mediation, with La Galvanina agreeing to pay James $50,000 in exchange for releases of both defendants and a dismissal with prejudice of all claims. On or about September 19, 2013, the parties signed a formal Settlement Agreement. After paying medical liens, James received a net amount of approximately $49,000 in the settlement.

"the set of facts relevant to the Legal Malpractice cause of action are independent of the set of facts supporting the [DTPA] claim and common-law fraud claim." Specifically, James contended "[t]he crux of Plaintiff's Legal Malpractice claim is that the Defendants failed to properly manage Ms. James' litigation in the underlying case; gave erroneous legal opinions or advice; failed to give advice, opinions, or relevant information when legally obligated to do so," whereas "[t]he core of Plaintiff's DTPA and common law fraud claims are specific to the cover-up engaged in by the Defendants, i.e. the misrepresentations and unconscionable actions on August 28, 2012, regarding James' personal jurisdiction over SPA and the status of Whole Foods in the Underlying Case." Further, James asserted she "suffered injuries to her neck and spine as a result of the Whole Foods incident" and "has Medical Records on file with the Court that will prove the injuries to Ms. James' neck and spine were a direct result of the Whole Foods Incident." The evidence attached to James's response to appellees' summary judgment motion included, among other things, a March 29, 2017 affidavit of James.[2]

Appellees filed a reply to James's summary judgment response in which they asserted in part,

> James has a complex medical history with incidents and surgeries both before and after the Whole Foods incident, including a 2001/2002 Lupus diagnosis, a 2002 on-the-job injury followed by three back surgeries in 2004–2006, and hit-and-run car accidents in 2006 and again in 2012 for which James filed claims for her injuries. To separate her medical conditions and treatment allegedly related to the fall at Whole Foods from her conditions and treatment a result of these other incidents, James needs expert testimony. Further, to connect the 2010 Whole Foods incident with her medical conditions, pain, and treatment seven years later, James needs expert testimony. . . . Spine and neck pain and related surgeries are the kind of medical conditions that are not within the common knowledge and experience of

---

[2] In her affidavit, James testified in part,

11. As a result of the Whole Foods Incident, I suffered injuries to my neck and spine. These issues have required me to have surgery and will continue to require me to have surgery in the future. In addition, due to the neck and spine injuries, I am unable to do household chores or enjoy the hobbies I participated in prior to the Whole Foods Incident, being mountain biking, painting, and interior design. I am also unable to travel to see family overseas.

. . . .

14. My overall health has suffered from chronic pain and chronic stress related to the Whole Foods Incident, which has forever changed my life.

jurors, and thus require expert testimony to establish causation. James has failed to present medical expert testimony on any of these issues.

Additionally, appellees contended (1) "[e]ven if the [trial court] were to find that this case presents the limited circumstances where James could prove causation for her medical conditions, treatment, and expenses without expert evidence, James has not presented the basic proof of her conditions, the sequence of events, or temporal proximity between the Whole Foods incident and her medical conditions and treatment to establish causation" and (2) "[a] review of the medical records on the file with the Court (which are not part of the summary judgment record) will reveal that no doctor linked the fall at Whole Foods to any medical condition of James, and James' current doctors are not recommending further surgery."

In an order dated March 29, 2017, the trial court denied James's motion for leave to file an amended pleading. Further, following a hearing on appellees' summary judgment motion, the trial court signed an April 11, 2017 order granting that motion without stating the basis for that ruling.

James filed a motion for new trial in which she restated her arguments described above and, additionally, stated in part (1) "[t]he [trial court] erred by granting Defendants' MSJ because there are disputed fact issues about whether Plaintiff's causes of action . . . are subject to Texas' Anti-Fracturing Rule, which must be submitted to the jury," and (2) "Plaintiff has on file with the Court, Medical Affidavits and Billing Records, which coupled with the experts listed by the Plaintiff, are sufficient to prove damages suffered by the Plaintiff." James's motion for new trial was denied by operation of law. This appeal timely followed.

## II. DENIAL OF MOTION FOR LEAVE TO AMEND PLEADING

### A. Standard of Review

We review a trial court's decision respecting whether to grant leave to file an amended pleading for abuse of discretion. *See, e.g., Hardin v. Hardin*, 597 S.W.2d 347, 349–50 (Tex. 1980); *Strange v. HRsmart, Inc.*, 400 S.W.3d 125, 131 (Tex. App.—Dallas 2013, no pet.). Likewise, we

review a trial court's enforcement of its scheduling order for an abuse of discretion. *Bagwell v. Ridge at Alta Vista Inv. I, LLC*, 440 S.W.3d 287, 292 (Tex. App.—Dallas 2014, pet. denied); *Gunn v. Fuqua*, 397 S.W.3d 358, 377 (Tex. App.—Dallas 2013, pet. denied). An abuse of discretion occurs when the trial court acts in an unreasonable and arbitrary manner or when it acts without reference to any guiding rules or principles. *Gunn*, 397 S.W.3d at 377.

### B. Applicable Law

Pursuant to Texas Rule of Civil Procedure 63, parties generally may amend their pleadings at any time prior to seven days before trial unless the amended pleadings operate as a surprise to the opposing party. TEX. R. CIV. P. 63. However, the deadline imposed by rule 63 for filing an amended petition may be altered by the trial court in a scheduling order issued pursuant to rule 166. *See* TEX. R. CIV. P. 166. Rule 166 states in part that if a trial court issues a pretrial order that "recites . . . the amendments allowed to the pleadings, . . . and the agreements made by the parties," "such order when issued shall control the subsequent course of the action, unless modified at the trial to prevent manifest injustice." *Id.*

### C. Application of Law to Facts

In her first issue, James contends the trial court abused its discretion when it denied her motion for leave to amend her pleading. Specifically, according to James, (1) "[t]he trial court should have permitted Appellant to amend her petition to add Mr. Eberstein because during the discovery process, Appellant determined that Mr. Eberstein was present and made false representations and committed unconscionable acts or courses of action in conversations with the Appellant"; (2) "due to the fact that the Appellees cannot show surprise and cannot show prejudice, the Appellant's Motion for Leave should have been granted by the trial court"; and (3) "Appellant

showed good cause based on these facts, that the trial court should have permitted Appellant's Fourth Amended Petition."[3]

Appellees respond that the trial court did not abuse its discretion by denying James's motion for leave to file an amended pleading because James "failed to show good cause for the amendment." Specifically, appellees assert in part (1) "James's position that she only learned of Eberstein's involvement and participation in the alleged fraud during the February 22, 2017 deposition of Amy Witherite is without support"; (2) "James herself testified during her January 25, 2017 deposition in this case that Brian Eberstein met with her and counseled her before mediation"; and (3) "James failed to make any argument of good cause in the trial court."

As described above, the record shows the "Discovery Control Plan" signed by the parties stated in part, "No additional parties may be joined more than twelve (12) months after the commencement of this case except on motion for leave showing good cause." That order "control[led] the subsequent course of the action." TEX. R. CIV. P. 166. Accordingly, James was required to show "good cause" for joining an additional party more than twelve months after this case was filed. In support of her assertion that she "showed good cause," James cites generally to her motion for leave to amend her pleadings. However, that motion does not mention or describe any "good cause" for allowing leave to amend. Further, (1) although James stated in that motion that "[Eberstein's] involvement and participation in the fraud has been discovered and confirmed throughout Plaintiff's utilization of the discovery process during the oral deposition of Ms. Witherite, which only occurred on February 22, 2017," James did not cite or describe any evidence to support that assertion, and (2) James did not describe or address how that assertion is consistent with her testimony in her January 25, 2017 deposition that Eberstein met with her and counseled

---

[3] Additionally, James contends in her brief in this Court that appellees "failed to . . . show the amendment removed the suit from the expedited-actions process in Texas Rule of Civil Procedure 169." James's appellate brief does not contain any argument or citation to authority or to the record respecting that contention. We conclude that contention presents nothing for this Court's review. See TEX. R. APP. P. 38.1(i).

her before mediation in the Lawsuit. On this record, we conclude the trial court did not abuse its discretion by concluding James did not establish good cause for amending her petition to join an additional party. *See Gunn*, 397 S.W.3d at 377; *see also Duchene v. Hernandez*, 535 S.W.3d 251, 256–57 (Tex. App.—El Paso 2017, no pet.) (even if trial court could have considered counsel's unsworn statements in making its determination of whether party established "good cause" for granting leave to file late summary judgment response, trial court did not abuse its discretion in refusing to find that counsel's bare assertions of calendaring errors and other "mistakes" were sufficient to establish good cause, where counsel provided no explanation respecting those errors).

We decide against James on her first issue.

### III. SUMMARY JUDGMENT

### *A. Standard of Review*

We review a trial court's granting of summary judgment de novo. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017) (citing *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015)). In our review we take as true all evidence favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and resolve any doubts in the non-movant's favor. *Id*. (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)).

To defeat a no-evidence motion for summary judgment, the non-movant must produce evidence raising a genuine issue of material fact as to the challenged elements. *Id*. at 220 (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). A genuine issue of material fact exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id*. (citing *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). The evidence does not create an issue of material fact if it is "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Id*. (quoting *Ridgway*, 135 S.W.3d at

601). A party moving for traditional summary judgment meets its burden by proving that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Id*. (citing TEX. R. CIV. P. 166a(c)).

### *B. Analysis*

In her second issue, James contends the trial court erred when it granted appellees' motion for summary judgment because (1) "there are disputed fact issues about whether [James's] causes of action . . . are subject to Texas' Anti-Fracturing Rule"; (2) there are disputed fact issues respecting James's DTPA and fraud causes of action "in regard to Appellees' misrepresentations to [James] regarding the status of Whole Foods as a viable Defendant and SPA as a viable Defendant"; and (3) James "provided summary-judgment evidence that raised a fact issue on Appellees' challenges to [James's] causes of action for Legal Malpractice."

### 1. Anti-Fracturing Rule

The anti-fracturing rule prevents a plaintiff from converting what are actually professional negligence claims against an attorney into other claims such as fraud or violations of the DTPA. *See Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied). For the anti-fracturing rule to apply, the gravamen of the plaintiff's complaints must focus on the quality or adequacy of the attorney's representation. *Id*. (citing *Murphy v. Gruber*, 241 S.W.3d 689, 692 (Tex. App.—Dallas 2007, pet. denied)). Professional negligence, or the failure to exercise ordinary care, includes giving a client bad legal advice or otherwise improperly representing the client. *Murphy*, 241 S.W.3d at 692–93 (citing *Newton v. Meade*, 143 S.W.3d 571, 574 (Tex. App.—Dallas 2004, no pet.)). "For example, an attorney can commit legal malpractice by giving an erroneous legal opinion or erroneous advice, by failing to give any advice or opinion when legally obliged to do so, by disobeying a client's lawful instruction, by taking an action when not instructed by the client to do so, by delaying or failing to handle a matter entrusted to the attorney's

care by the client, or by not using an attorney's ordinary care in preparing, managing, and presenting litigation that affects the client's interests." *Isaacs v. Schleier*, 356 S.W.3d 548, 559 (Tex. App.—Texarkana 2011, pet. denied) (citing *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923–24 (Tex. App.—Fort Worth 2003, pet. denied)); *accord Murphy*, 241 S.W.3d at 693. In determining the applicability of the anti-fracturing rule, "we are not bound by the labels the parties place on their claims." *Murphy*, 241 S.W.3d at 697. Further, whether certain allegations asserted against an attorney are actually claims for professional negligence is a question of law to be determined by the court and is reviewed de novo. *Id*. at 692.

In the case before us, James contends "the set of facts relevant to the Legal Malpractice cause of action are independent of the set of facts supporting the DTPA claim and common-law fraud claim."[4] Specifically, according to James,

> The crux of [James's] Legal Malpractice claim is that the Appellees failed to properly manage [James's] litigation in the Underlying Case; failed to plead the case correctly; gave erroneous legal opinions or advice; failed to give advice, opinions, or relevant information when legally obligated to do so. The gravamen of [James's] DTPA and common-law fraud claims is specific to the misrepresentations made in the cover-up engaged in by the Appellees, i.e. the explicit misrepresentations and unconscionable actions taken by them on and before August 28, 2012, regarding [James's] lack of personal jurisdiction over SPA, and the status of Whole Foods as not a viable defendant in the Underlying Case, neither of which were true as a matter of fact at the time the misrepresentations were made.

(citations to record omitted).

Appellees argue James's DTPA and fraud claims were barred by the anti-fracturing rule as a matter of law. Specifically, appellees assert in part (1) "for all her claims, James makes similar allegations based on alleged settlement advice and claims the same damages—'Ms. James settled for a deficiently lower amount based on Defendants' improper legal advice . . . ,'" and (2) "James's

---

[4] In her brief in this Court, James does not specifically challenge the applicability of the anti-fracturing rule to her negligent misrepresentation claim, nor does she include any argument or citation to authority respecting that rule's applicability to that claim. Therefore, the applicability of the anti-fracturing rule to James's negligent misrepresentation claim is not presented for this Court's review. *See* TEX. R. APP. P. 38.1(i).

true complaint related to Witherite's jurisdictional analysis and settlement advice lies in the quality and adequacy of Witherite and E&W's legal representation of James."

As described above, the record shows each of James's allegations in question complains about one or more of the following: "giving an erroneous legal opinion or erroneous advice," "failing to give any advice or opinion when legally obliged to do so," "delaying or failing to handle a matter entrusted to the attorney's care by the client," and "not using an attorney's ordinary care in preparing, managing, and presenting litigation that affects the client's interests." *See Isaacs*, 356 S.W.3d at 559. On this record, we conclude James's fraud and DTPA claims were barred by the anti-fracturing rule. *See J.A. Green Dev. Corp. v. Grant Thornton, LLP*, No. 05-15-0029-CV, 2016 WL 3547964, at *8 (Tex. App.—Dallas June 28, 2016, pet. denied) (mem. op.) (where essence of plaintiff's complaint was that attorney's advice was wrong and incomplete, plaintiff's allegations focused on adequacy of representation and constituted professional negligence claim); *see also Murphy*, 241 S.W.3d at 698–99 (where essence of pleaded allegations was attorney's failure to properly advise, inform, and communicate with client about case, allegations asserted claims of professional negligence); *Archer v. Med. Protective Co.*, 197 S.W.3d 422, 427 (Tex. App.—Amarillo 2006, pet. denied) (claims that lawyer neglected matters, mis-evaluated case, and failed to communicate with client alleged professional negligence). Accordingly, the trial court did not err by granting appellees' motion for summary judgment as to those claims. *See First United Pentecostal Church of Beaumont*, 514 S.W.3d at 220.

2. Legal Malpractice

To prevail on a claim for legal malpractice, "the client must establish that (1) the lawyer owed a duty of care to the client; (2) the lawyer breached that duty; and (3) the lawyer's breach proximately caused damage to the client." *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017). Specifically, when a plaintiff alleges that some failure on his attorney's part caused an adverse

–14–

result in prior litigation, he must prove that but for his attorney's negligence, he would have prevailed in the underlying case. *Green v. McKay*, 376 S.W.3d 891, 898 (Tex. App.—Dallas 2012, pet. denied). Proof of cause in fact "involves a comparison of two cases—the case containing imprudent attorney conduct and the case the plaintiff claims should have unfolded with competent representation." *Rogers*, 518 S.W.3d at 407. "This re-creation is typically referred to as the 'case-within-a-case' or 'suit-within-a-suit' and is the accepted and traditional means of resolving the issues involved in the underlying proceeding in a legal malpractice action." *Id*. at 401. The applicable test is "but-for" causation. *Id*. at 412. "If the plaintiff would have needed medical-expert testimony to prevail in the underlying suit, then the same kind of testimony is required to prove the case within a case in the legal-malpractice suit." *Kelley & Witherspoon, LLP v. Hooper*, 401 S.W.3d 841, 849 (Tex. App.—Dallas 2013, no pet.). Although causation is typically a question of fact, it may be determined as a matter of law when reasonable minds could not arrive at a different conclusion. *Rogers*, 518 S.W.3d at 412.

"[N]on-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence." *Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007); *see id*. at 667 ("if [plaintiff] had been pulled from a damaged automobile with overt injuries such as broken bones or lacerations, and undisputed evidence which reasonable jurors could not disbelieve showed that he did not have such injuries before the accident, then the physical conditions and causal relationship between the accident and the conditions would ordinarily be within the general experience and common knowledge of laypersons"). However, "[t]he general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *Id*. at 665. Specifically, "[e]xpert

–15–

testimony is required to establish aggravation of a preexisting medical condition." *State Office of Risk Mgmt. v. Adkins*, 347 S.W.3d 394, 401 (Tex. App. Dallas, 2011, no pet.). Further, "[w]e cannot conclude that laypersons have the knowledge to understand the intricacies involved in diagnosing a back injury without some guidance from a medical expert." *Id.*; *see also Diez v. Alaska Structures, Inc.*, 455 S.W.3d 737, 743 (Tex. App.—El Paso 2015, no pet.) (plaintiff's own lay witness testimony that he fell, experienced sore neck, and later had neck surgery merely raised suspicion that event caused his neck injury and was not legally sufficient to support a finding of causation); *Benham v. Lynch*, No. 04-09-00606-CV, 2011 WL 381665, at *3 (Tex. App.—San Antonio Feb. 2, 2011, no pet.) (mem. op.) ("necessity for neck surgery and its cause is generally not within the experience of the ordinary layperson"). Additionally, medical problems suffered months or years after an incident are generally "remote" and cannot be causally connected to the incident without medical-expert testimony. *See Kelley & Witherspoon*, 401 S.W.3d at 850–51.

In the case before us, James argues the trial court erred by granting appellees' no-evidence motion for summary judgment as to her legal malpractice claim because she provided summary-judgment evidence to raise a fact issue on each challenged element of that claim. Specifically, as to damages, James contends, "Appellant has on file with the Court, Medical Affidavits and Billing Records, which coupled with the experts listed by the Appellant, are sufficient to prove damages suffered by the Appellant." Also, James asserts in her reply brief in this Court that appellees' contention that she has no medical testimony to support her injuries is "incorrect" because she "filed numerous medical records affidavits and designated medical experts to testify regarding the injuries suffered by [her] as a result of the fall at Whole Foods."

Appellees respond in part that James could not satisfy the "suit-within-a-suit proximate causation element of her legal malpractice claim" because she "has no evidence, expert testimony

or otherwise, to link any of her medical conditions, treatment, or expenses to the fall at Whole Foods." Specifically, appellees assert in part,

> James has a complex medical history with incidents and surgeries both before and after the Whole Foods incident, including a 2001/2002 Lupus diagnosis, a 2002 on-the-job injury followed by three back surgeries in 2004-2006, and hit-and-run car accidents in 2006 and again in 2012 for which James filed claims for her injuries. To separate her medical conditions and treatment allegedly related to the fall at Whole Foods from her conditions and treatment a result of these other incidents, James needs expert testimony. Further, to connect the 2010 Whole Foods incident with her medical conditions, pain, and treatment seven years later, James needs expert testimony. . . . Spine and neck pain and related surgeries are the kind of medical conditions that are not within the common knowledge and experience of jurors, and thus require expert testimony to establish causation.

(citation to record omitted). Further, appellees contend (1) "a review of the medical records on file with the trial court, but which were not part of the summary judgment record such that they could not be considered by the trial court for purposes of deciding the motion, show that no doctor linked the fall at Whole Foods to any medical condition of James, and James's current doctors are not recommending further surgery," and (2) James's testimony respecting causation in her March 29, 2017 affidavit "was nothing but conclusory statements and incompetent lay testimony due to lack of qualification as a medical expert."

As described above, the underlying Lawsuit included claims for products liability, negligence, and premises liability. The elements of each of those claims included damages caused by the alleged improper acts or omissions. *See Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W.3d 338, 352 (Tex. 2015) (elements of negligence claim are existence of legal duty, breach of that duty, and damages proximately caused by that breach); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99–100 (Tex. 2000) (elements of premises liability claim alleged by invitee are actual or constructive knowledge of condition on premises, unreasonable risk of harm posed by condition, failure to exercise reasonable care to reduce or eliminate risk, and injuries proximately caused by failure to exercise reasonable care); TEX. CIV. PRAC. & REM. CODE ANN. § 82.005 (West 2011) (in

products liability claim in which claimant alleges design defect, plaintiff must prove by preponderance of evidence that "there was a safer alternative design" and "the defect was a producing cause of the personal injury . . . for which the claimant seeks recovery"). Therefore, causation was an element of James's "suit-within-a-suit" burden respecting each of her claims in the underlying Lawsuit. *See Green*, 376 S.W.3d at 898.

Additionally, the record shows (1) James claimed injury to her neck and spine; (2) James had pre-existing medical conditions at the time of the Whole Foods incident in question and has suffered an automobile accident since that time; and (3) the medical records filed by James pertain to treatment for conditions she suffered months and years after the incident in question. On this record, we conclude medical-expert testimony was required to prove causation respecting James's claims in the underlying Lawsuit and therefore was necessary to satisfy her suit-within-a-suit burden as to her legal malpractice claim. *See Kelley & Witherspoon*, 401 S.W.3d at 849; *see also Adkins*, 347 S.W.3d at 401; *Diez*, 455 S.W.3d at 743; *Benham*, 2011 WL 381665, at *3.

Further, even assuming without deciding that the "medical affidavits and billing records" filed by James and her list of "designated medical experts" were properly before the trial court as summary judgment evidence, nothing in those documents demonstrates that any physician has opined or stated that her medical conditions were caused by the Whole Foods incident in question. Accordingly, on this record, we conclude James did not meet her suit-within-a-suit burden to produce evidence respecting causation. *See Rogers*, 518 S.W.3d at 412. Therefore, the trial court properly granted appellees' no-evidence motion for summary judgment on James's legal malpractice claim. *See id*.

We decide against James on her second issue.

–18–

## IV. MOTION FOR NEW TRIAL

### A. *Standard of Review*

We review the denial of a motion for new trial for an abuse of discretion. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). Under this standard, we may not overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

### B. *Analysis*

In her third issue, James contends the trial court erred by allowing her motion for new trial to be denied by operation of law because she "presented evidence that showed genuine issues of material facts existed as to each cause of action alleged by [James] against Appellees in relation to the Underlying Case." Specifically, James asserts she "incorporates by reference all preceding facts set forth" in her appellate brief and "directs the Court's attention to the arguments outlined in detail above, and urges the Court that for the same reasons, the trial court erred in denying [her motion for new trial]."

Because James relies solely on the same arguments already described above, we need not address those arguments in detail. Based on the analysis and conclusions described above, we conclude the trial court did not abuse its discretion by denying James's motion for new trial.

We decide James's third issue against her.

## V. CONCLUSION

We decide against James on her three issues. The trial court's judgment is affirmed.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

170799F.P05

–19–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ZENA JAMES, Appellant

No. 05-17-00799-CV      V.

AMY K. WITHERITE AND EBERSTEIN
& WITHERITE, LLP, Appellees

On Appeal from the 160th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-09989.
Opinion delivered by Justice Lang, Justices
Fillmore and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees AMY K. WITHERITE AND EBERSTEIN &
WITHERITE, LLP recover their costs of this appeal from appellant ZENA JAMES.

Judgment entered this 9th day of November, 2018.